UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRAD JENKINS, | ) |
|        Plaintiff, | ) |
| vs. | ) Cause No. |
| JILL JENKINS SEIFERT, | ) |
| Serve: BY PRIVATE PROCESS SERVER | ) **JURY TRIAL DEMANDED** |
| 5318 Manor Glen Drive<br>Kingwood, Texas 77345 | ) |
|        Defendant. | ) |

## VERIFIED COMPLIANT

COMES NOW Plaintiff Brad Jenkins ("**Plaintiff**"), by and through his undersigned counsel, and for his causes of action against Defendant Jill Jenkins Seifert ("**Defendant**") states as follows:

## PARTIES

1. Plaintiff is an individual residing in St. Louis County, Missouri and a citizen of the State of Missouri.

2. On information and belief, Defendant is an individual residing in Harris County, Texas and a citizen of the State of Texas.

3. Plaintiff and Defendant are siblings and the only children of Ruth Jenkins and Gene Jenkins, and the only heirs to the Estate of Ruth Jenkins.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and as Plaintiff and Defendant are citizens of different states.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events and omissions giving rise to the claims at issue occurred in this judicial District.

**GENERAL ALLEGATIONS**

**RUTH'S INCAPACITY AND INCOMPETENCY**

6. On March 2, 2012, Gene Jenkins commenced divorce proceedings against Ruth Jenkins in the Circuit Court of St. Louis County in a matter styled *Gene Jenkins v. Ruth Jenkins*, Cause No. 12SL-DR01457 (the "**Divorce Proceedings**").

7. During the Divorce Proceedings, Defendant was granted a durable power of attorney over Ruth Jenkins and her affairs pursuant to that certain *Durable Power of Attorney of Ruth Jenkins* executed by Ruth Jenkins and dated January 2, 2013 and also named as Ruth Jenkins' guardian *ad litem*. A copy of the *Durable Power of Attorney of Ruth Jenkins* is attached hereto as **Exhibit A**.

8. In gaining her appointment as Ruth Jenkins' guardian *ad litem*, on January 22, 2013, Defendant executed that certain *Affidavit in Support of Appointment of Guardian Ad Litem* and stated therein that "Ruth Jenkins is currently incapacitated to act her in own best interest and to participate as a party in the pending cause of action because of the effects of depression, alcoholism, multiple medications and recent surgeries undergone by [Ruth Jenkins] within the last five (5) months. Ruth [Jenkins] has contacted me directly and requested that I act as her

2

Guardian Ad Litem and representative . . ."  A copy of the *Affidavit in Support of Appointment of Guardian Ad Litem* is attached hereto as **Exhibit B**.

9. Additionally, after the dissolution of Ruth Jenkins' and Gene Jenkins' marriage was granted, pursuant to an *Order to Show Cause* which was issued in the Divorce Proceedings and adverse to Ruth Jenkins, Defendant applied to be reappointed as Ruth Jenkins' guardian *ad litem*—an application which was granted by the Court—and on September 2, 2014 executed that certain *Affidavit in Support of Reappointment of Guardian Ad Litem*, stating therein that "Ruth Jenkins is currently incapacitated to act her in own best interest and to participate as a party in the pending motions because of the effects of depression, alcoholism and multiple medications taken over the last two years.  Ruth contacted me directly and requested that I act as her Guardian Ad Litem and representative . . ."  A copy of the *Affidavit in Support of Reappointment of Guardian Ad Litem* is attached hereto as **Exhibit C**.

10. Accordingly, from at least January 2, 2013 until the date of her death on February 21, 2016, Ruth Jenkins was incapacitated and incompetent to handle her own affairs—including her financial affairs—as a result of her depression, alcoholism, health issues, and multiple medications, all of which impaired her thought processes and made her more susceptible to undue influence.

11. During the time that Ruth Jenkins had been adjudged by the Circuit Court of Saint Louis County, Missouri to be incapacitated and incompetent to handle her own affairs—including her financial affairs—a conclusion which was agreed to by Defendant through her sworn affidavits—Defendant convinced Ruth Jenkins to move from St. Louis County, Missouri to Harris County, Texas to reside with Defendant where, on information and belief, Ruth Jenkins

3

was completely dependent upon Defendant to manage her affairs as a result of her incompetency and incapacity, and Defendant had unlimited and unfettered access to Ruth Jenkins.

## RUTH'S ASSETS

12. At the time that Ruth Jenkins' and Gene Jenkins' divorce was finalized—at which time Ruth Jenkins was incapacitated and incompetent to handle her own affairs—Ruth Jenkins possessed assets which were, on information and belief, valued at least at approximately $750,000.00, and which included, but were not necessarily limited to: (i) bank accounts with Indiana Credit Union (the "**Indiana Accounts**"); (ii) investment accounts with Edward Jones (the "**Edward Jones Accounts**"); (iii) a bank account with USAA Federal Savings Bank (the "**USAA Account**"); (iv) proceeds from the sale of certain real property located at 12185 Edelen Lane, Sunset Hills, Missouri 63127 (the "**Edelen Residence Proceeds**"); (v) various personal property (the "**Personal Property**"); (vi) monthly distributions from a University of Missouri Retirement, Disability & Death Benefit Plan (the "**Plan Payments**"); and (vii) monthly Social Security benefits (the "**Social Security Payments**," together with the Indiana Accounts, the Edward Jones Accounts, the USAA Account, the Edelen Residence Proceeds, the Personal Property, the Plan Payments, the Social Security Payments, and any other assets possessed by Ruth Jenkins from the time of her divorce until her death, collectively, the "**Assets**").

13. At all relevant times, as a result of her incapacity and incompetency, Ruth Jenkins was dependent upon Defendant to manage and control the Assets, and Defendant exerted substantial control over the Assets and Ruth Jenkins' business affairs and financial decisions.

14. During Ruth Jenkins' incapacitation and incompetency, she designated Defendant as the sole beneficiary of the Edward Jones Accounts, which, on information and belief, held the vast majority of the value of the Assets (the "**Edward Jones Account Transfers**").  Copies of the beneficiary designation forms are attached hereto as **Exhibit D**.

15. On information and belief, Ruth Jenkins executed the beneficiary designation forms for the Edward Jones Accounts at the direction of and as a result of the undue influence of Defendant.

16. On information and belief, Ruth Jenkins did not have the requisite mental capacity—and, accordingly, was mentally incompetent—to execute the beneficiary designation forms for the Edward Jones Accounts.

17. The Edward Jones Accounts had a combined value of approximately $690,000.00 within eighteen (18) months of Ruth Jenkins' death on February 21, 2016.

18. Throughout her life, Ruth Jenkins maintained a good relationship with her son, Plaintiff.

19. On information and belief, prior to her move to Harris County, Texas, and Defendant being appointed as Ruth Jenkins' guardian *ad litem*, gaining a durable power of attorney over Ruth Jenkins' affairs—financial and otherwise—and being appointed as the sole beneficiary of the Edward Jones Accounts, Ruth Jenkins had not shown a disposition to favor either Plaintiff or Defendant with lifetime gifts or any estate plan, Ruth Jenkins did not have in effect a will, trust, or any other estate planning and distribution plan documents, and Plaintiff and Defendant were each entitled to receive 50% of the Assets from the Estate of Ruth Jenkins.

20. On information and belief, no probate action has been commenced regarding the Estate of Ruth Jenkins.

COUNT I
DECLARATORY JUDGMENT ACTION PURSUANT TO 28 U.S.C. § 2201
REGARDING TITLE TO PROPERTY

21. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

22. During her lifetime, Ruth Jenkins transferred the right to receive substantially all of the Assets to Defendant—including through the Edward Jones Account Transfers—and/or, on information and belief, paid over certain portions of the Assets to Defendant (collectively, the "**Lifetime Transfers**") due to Defendant's exercise of undue influence over Ruth Jenkins.

23. Defendant was in a confidential and fiduciary relationship with Ruth Jenkins, exercising fiduciary control over and handling Ruth Jenkins' affairs—including her financial affairs—regularly providing judgment, advice, and counsel to Ruth Jenkins, and having unfettered access to and control over Ruth Jenkins by taking Ruth Jenkins into her home from in or about February of 2013 until Ruth Jenkins' death, and it was during this time that Ruth Jenkins made the Lifetime Transfers.

24. The precise quantity of the Assets transferred through the Lifetime Transfers is unknown at this time, as it has been improperly concealed by Defendant, but Plaintiff anticipates that the precise quantity will be fully and specifically identified through discovery.

25. Defendant was the surviving joint tenant and/or beneficiary to be paid on Ruth Jenkins' death of the Edward Jones Accounts which, on information and belief, held substantially all of the Assets, through undue influence due to Defendant's abuse of her fiduciary and confidential relationship with Ruth Jenkins.

26. If the Assets transferred through the Lifetime Transfers are recovered into the Estate of Ruth Jenkins, Plaintiff would stand to benefit by receiving 50% of same as an heir of Ruth Jenkins.

27. The title or possession of the Assets transferred through the Lifetime Transfers are being improperly and adversely withheld and claimed by Defendant, or have been wrongfully detained, transferred, or otherwise disposed of by Defendant.

6

28. Ruth Jenkins lacked the mental capacity to make and appreciate the disposition of the Assets transferred through Lifetime Transfers to Defendant.

29. The Lifetime Transfers were unnatural dispositions of the Assets and were out of character with the manner in which the Assets would have been distributed otherwise.

30. An ordinarily reasonable person standing in Ruth Jenkins' position would not have made the Lifetime Transfers.

31. Defendant exercised undue influence over Ruth Jenkins which destroyed Ruth Jenkins' free agency and determination and substituted the free agency and determination of Defendant for Ruth Jenkins' own, and the Lifetime Transfers were the result of that undue influence.

32. Defendant substantially benefitted—to Plaintiff's substantial detriment—by the Lifetime Transfers.

33. Plaintiff was damaged by Defendant's actions, in that he would stand to receive a substantially greater amount of the Assets through the administration of the Estate of Ruth Jenkins had the undue influence not taken place and resulted in the Lifetime Transfers while Ruth Jenkins lacked the mental capacity to accomplish same.

34. On information and belief, Defendant was an active participant in causing the Lifetime Transfers to be drafted, executed, and/or made.

35. Pursuant to 28 U.S.C. § 2201, this Court should declare the Lifetime Transfers to be void and/or invalid for undue influence, and that proper title or right to possession of the Assets transferred through Lifetime Transfers to be that of the Estate of Ruth Jenkins.

WHEREFORE, Plaintiff Brad Jenkins respectfully requests that this Court enter an Order granting Judgment in favor of Plaintiff and against Defendant Jill Jenkins Seifert determining

that proper title or right to possession of the property involved in the Lifetime Transfers to be that of the Estate of Ruth Jenkins, setting aside the Lifetime Transfers, declaring the Lifetime Transfers to be void and/or invalid for undue influence, ordering Defendant to repay such amounts as she received, with interest, to the Estate of Ruth Jenkins, or taking the Assets transferred through Lifetime Transfers into constructive trust for the benefit of the Estate of Ruth Jenkins, for an accounting of all of the Assets from January 2, 2013 until the date of Ruth Jenkins' death, for damages suffered by Plaintiff as a result of the Edward Jones Account Transfers in an amount to be determined at trial, for Plaintiff's attorneys' fees and costs incurred in pursuing this action and the subject matter thereof, and for such other and further relief as this Court deems necessary and appropriate.

**COUNT II**
**DECLARATORY JUDGMENT ACTION PURSUANT TO 28 U.S.C. § 2201 TO VOID OR INVALIDATE THE EDWARD JONES ACCOUNT TRANSFERS**

36. Plaintiff incorporates by reference all other paragraphs of this Complain as if fully set forth herein.

37. The Edward Jones Account Transfers altered the disposition of the Assets from the Estate of Ruth Jenkins so as to create an unnatural disposition of the Assets from same, given the history and relationship between Ruth Jenkins and her family, the large values involved, and the ultimate extremely disparate treatment of Plaintiff and Defendant.

38. Defendant was in a confidential and fiduciary relationship with Ruth Jenkins, exercising fiduciary control over and handling Ruth Jenkins' affairs—including, but not limited to, financial affairs— regularly providing judgment, advice, and counsel to Ruth Jenkins, and having unfettered access to and control over Ruth Jenkins by taking Ruth Jenkins into her home from in or about February of 2013 until Ruth Jenkins' death, and it was during this time that Ruth Jenkins made the Edward Jones Account Transfers.

8

39. Ruth Jenkins lacked the mental capacity to make and appreciate the disposition of the Assets transferred through the Edward Jones Account Transfers to Defendant.

40. An ordinarily reasonable person standing in the position of Ruth Jenkins would not have made the Edward Jones Account Transfers.

41. Defendant exercised undue influence over Ruth Jenkins, which destroyed Ruth Jenkins' free agency and determination and substituted the free agency and determination of Defendant for Ruth Jenkins' own, and the Edward Jones Account Transfers were the result of that undue influence.

42. Defendant substantially benefitted—to Plaintiff's substantial detriment—by the Edward Jones Account Transfers.

43. On information and belief, Defendant was an active participant in causing the Edward Jones Account Transfers to be drafted, executed, and/or made.

44. Pursuant to 28 U.S.C. § 2201, this Court should declare the Edward Jones Account Transfers to be void and/or invalid for undue influence.

WHEREFORE Plaintiff Brad Jenkins respectfully request that this Court enter an Order granting Judgment in favor of Plaintiff and against Defendant Jill Jenkins Seifert declaring the Edward Jones Account Transfers to be void and/or invalid for undue influence, ordering Defendant to repay such amounts as she received, with interest, to the Estate of Ruth Jenkins, taking the Assets transferred through Edward Jones Account Transfers into constructive trust for the benefit of the Estate of Ruth Jenkins, for damages suffered by Plaintiff as a result of the Edward Jones Account Transfers in an amount to be determined at trial, for an accounting of all of the Assets from January 2, 2013 until the date of Ruth Jenkins' death, for Plaintiff's attorneys' fees and costs incurred in pursuing this action and the subject matter thereof, and for such other

and further relief as this Court deems necessary and appropriate.

## COUNT III
## DISCOVERY OF ASSETS

45. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

46. Plaintiff is an heir of Ruth Jenkins and beneficiary of the Estate of Ruth Jenkins, for which a probate proceeding has not yet been commenced.

47. During Ruth Jenkins' lifetime, she was the owner of various property, including the Assets.

48. The Assets transferred through the Lifetime Transfers are rightfully assets of the Estate of Ruth Jenkins.

49. During Ruth Jenkins' lifetime, she made the Lifetime Transfers, which included, but, on information and belief, were not limited to, the Edward Jones Account Transfers.

50. The precise quantity and character of the Assets transferred through Lifetime Transfers is unknown at this time, as it has been improperly concealed by Defendant, but Plaintiff anticipates that same will be fully and specifically identified through discovery.

51. Ruth Jenkins lacked the mental capacity to appreciate the disposition of the Assets transferred through Lifetime Transfers to Defendant.

52. Defendant was in a confidential and fiduciary relationship with Ruth Jenkins, exercising fiduciary control over and handling Ruth Jenkins' affairs—including, but not limited to, financial affairs— regularly providing judgment, advice, and counsel to Ruth Jenkins, and having unfettered access to and control over Ruth Jenkins by taking Ruth Jenkins into her home from in or about February of 2013 until Ruth Jenkins' death.

53. Defendant exercised undue influence over Ruth Jenkins, which destroyed Ruth Jenkins' free agency and determination and substituted the free agency and determination of Defendant for Ruth Jenkins' own, and the Lifetime Transfers were the result of that undue influence.

54. The Lifetime Transfers were unnatural dispositions of the Assets and were out of character with the manner in which the Assets would have been distributed otherwise.

55. An ordinarily reasonable person standing in Ruth Jenkins' position would not have made the Lifetime Transfers.

56. Defendant substantially benefitted—to Plaintiff's substantial detriment—by the Lifetime Transfers

57. If the Assets transferred through Lifetime Transfers are recovered into the Estate of Ruth Jenkins, Plaintiff would stand to benefit by receiving 50% of same as an heir of the Estate of Ruth Jenkins.

58. The title or possession of the Assets, which includes, but is not necessarily limited to, the property transferred through the Lifetime Transfers, are being improperly and adversely withheld and claimed by Defendant, or have been wrongfully detained, transferred, or otherwise disposed of by Defendant.

59. This Court should determine the proper title, or right of possession, or both, of the Assets, which includes, but is not necessarily limited to, the property transferred through the Lifetime Transfers.

WHEREFORE, Plaintiff Brad Jenkins prays that this Court enter an Order granting Judgment in favor of Plaintiff and against Defendant Jill Jenkins Seifert for the discovery of any and all of the Assets transferred through the Lifetime Transfers, and any other assets, rightfully

belonging to the Estate of Ruth Jenkins, determining the title and right of possession thereto, a determination of the persons who have an interest in the Lifetime Transfers, and other assets, rightfully belonging to the Estate of Ruth Jenkins, together with the nature and extent of such interest, the delivery or transfer of the Lifetime Transfers to the Estate of Ruth Jenkins, an accounting of all of Ruth Jenkins' assets from January 2, 2013 until the date of Ruth Jenkins' death, for damages suffered by Plaintiff as a result of the Edward Jones Account Transfers in an amount to be determined at trial, Plaintiff's attorneys' fees and costs incurred in pursuing this action and the subject matter thereof, and such other and further relief as this Court deems necessary and appropriate.

## COUNT IV
## BREACH OF FIDUCIARY DUTY

60. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

61. As a result of Defendant having a power of attorney over Ruth Jenkins, a fiduciary relationship existed between Defendant and Ruth Jenkins, and Defendant owed fiduciary duties to Ruth Jenkins.

62. As a result of Defendant's exercise of undue influence on Ruth Jenkins, Defendant breached her fiduciary duties owed to Ruth Jenkins.

63. Defendant's breach of her fiduciary duties owed to Ruth Jenkins caused the unnatural and inappropriate disposition of the Assets through the Lifetime Transfers.

64. As a result of Defendant's breach of her fiduciary duties owed to Ruth Jenkins, both the Estate of Ruth Jenkins and Plaintiff were harmed.

65. Defendant substantially benefitted—to Plaintiff's substantial detriment—by the Lifetime Transfers.

66. If the Assets transferred through Lifetime Transfers are recovered into the Estate of Ruth Jenkins, Plaintiff would stand to benefit by receiving 50% of same as an heir of the Estate of Ruth Jenkins.

67. Defendant's conduct was intentional, willful, and outrageous because Defendant's evil motive or reckless indifference to Plaintiff's rights, and, consequently, Plaintiff is also entitled to punitive damages.

WHEREFORE, Plaintiff Brad Jenkins prays that this Court enter an Order granting Judgment in favor of Plaintiff and against Defendant Jill Jenkins Seifert for damages in an amount to be determined at trial, punitive damages in an amount to be determined at trial, the delivery or transfer of the Lifetime Transfers to the Estate of Ruth Jenkins, an accounting of all of Ruth Jenkins' assets from January 2, 2013 until the date of Ruth Jenkins' death, Plaintiff's attorneys' fees and costs incurred in pursuing this action and the subject matter thereof, and such other and further relief as this Court deems necessary and appropriate.

### COUNT V
### CONVERSION

68. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

69. Plaintiff had a beneficiary interest in the Assets both before and after Ruth Jenkins' death.

70. Defendant caused the Lifetime Transfers and depleted the Assets by her exercise of undue influence over Ruth Jenkins, and, on information and belief, by her abuse of signatory privileges that Defendant enjoyed over the Edward Jones Accounts, the Indiana Accounts, and the USAA Account, which are each identifiable funds held and/or controlled by Defendant for a specific purpose as Ruth Jenkins' fiduciary.

71. Defendant caused both the transfer of certain of the Assets, including, but not limited to, the Edward Jones Accounts, the Indiana Accounts, and the USAA Account, into her own personal accounts and, on information and belief, expended same for her own personal benefit, despite that she did not have the right to assume ownership or possession of same.

72. Accordingly, notwithstanding Defendant's lack of right to assume ownership and possession of the value of the Assets, including, but not limited to, the Edward Jones Accounts, the Indiana Accounts, and the USAA Account, Defendant did assume ownership and possession over same.

73. As an heir of the Estate of Ruth Jenkins, Plaintiff is entitled to immediate ownership and/or possession of 50% of the value Assets, including, but not limited to, the value of what was contained in the Edward Jones Accounts, the Indiana Accounts, and the USAA Account.

74. By letter dated September 15, 2016, Plaintiff demanded that Defendant turnover to Plaintiff 50% of the value of Assets, which includes, but is not limited to, the value of what was contained in the Edward Jones Accounts, the Indiana Accounts, and the USAA Account.

75. Despite demand, Defendant has failed and refused, and continues to fail and refuse, to turnover to Plaintiff 50% of the value of Assets, which includes, but is not limited to, the value of what was contained in the Edward Jones Accounts, the Indiana Accounts, and the USAA Account.

76. Defendant took such actions with the intent to deprive Plaintiff of his beneficial interest in the value of Assets, including, but not limited to, the value of what was contained in the Edward Jones Accounts, the Indiana Accounts, and the USAA Account.

77. Accordingly, Plaintiff is entitled to recover damages for 50% of the value of Assets, including, but not limited to, the value of what was contained in the Edward Jones Accounts, the Indiana Accounts, and the USAA Account.

78. Defendant's conduct was intentional, willful, and outrageous because Defendant's evil motive or reckless indifference to Plaintiff's rights, and, consequently, Plaintiff is also entitled to punitive damages.

WHEREFORE, Plaintiff Brad Jenkins prays that this Court enter an Order granting Judgment in favor of Plaintiff and against Defendant Jill Jenkins Seifert for damages an amount to be determined at trial, punitive damages in an amount to be determined at trial, Plaintiff's attorneys' fees and costs incurred in pursuing this action and the subject matter thereof, and such other and further relief as this Court deems necessary and appropriate.

77. Accordingly, Plaintiff is entitled to recover damages for 50% of the value of Assets, including, but not limited to, the value of what was contained in the Edward Jones Accounts, the Indiana Accounts, and the USAA Account.

78. Defendant's conduct was intentional, willful, and outrageous because Defendant's evil motive or reckless indifference to Plaintiff's rights, and, consequently, Plaintiff is also entitled to punitive damages.

WHEREFORE, Plaintiff Brad Jenkins prays that this Court enter an Order granting Judgment in favor of Plaintiff and against Defendant Jill Jenkins Seifert for damages an amount to be determined at trial, punitive damages in an amount to be determined at trial, Plaintiff's attorneys' fees and costs incurred in pursuing this action and the subject matter thereof, and such other and further relief as this Court deems necessary and appropriate.

**CERTIFIED VERIFICATION**

**BRAD JENKINS**

By: _____
    Brad Jenkins

STATE OF _Missouri_ )
                    ) SS.
COUNTY OF _St Louis_ )

On this 30th day of September, 2016, before me personally appeared Brad Jenkins, to me personally known, who, being by me duly sworn, did depose and state that the foregoing Verified Complaint was signed by him and on his own behalf. Brad Jenkins deposes and states that, under penalty of perjury, he has read the Verified Complaint, that he has personal knowledge of the contents thereof, and that the allegations contained therein are true and correct to the best of his personal knowledge, information, and belief.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

_____
Notary Public

My Commission Expires:

2-13-18

SANDRA L. PIENING
Notary Public - Notary Seal
STATE OF MISSOURI
St. Louis County
My Commission Expires: Feb. 13, 2018
Commission # 14513171

16

By: */s/ F. Scott Galt*
F. Scott Galt, #56548MO
Andrew Zimmerman, #64265MO
Armstrong Teasdale LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
Telephone:  314.621.5070
Fax:  314.621.5065
sgalt@armstrongteasdale.com
azimmerman@armstrongteasdale.com

ATTORNEYS FOR PLAINTIFF BRAD JENKINS.